# 97 DTA 151

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE PONCE Y AIBONITO
PANEL I**

EDUVIGES ROSADO ORTIZ
Demandante-Apelado

v.

FRANCISCO BERRIOS SANTOS
Demandado-Apelante

Núm. KLAN-95-00213

San Juan, Puerto Rico, a 27 de junio de 1997

Panel integrado por su Presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

## TEXTO COMPLETO DE LA SENTENCIA

El 9 de marzo de 1994, el apelante, Sr. Francisco Berríos Santos, presentó ante el entonces Tribunal Superior, Sala de Aibonito, el presente recurso de apelación, donde solicita la revocación de una sentencia de 31 de enero de 1994 emitida por el entonces Tribunal de Distrito, Sala de Comerío. Mediante la referida sentencia, el foro apelado declaró con lugar una demanda de rescisión de contrato y declaró sin lugar la reconvención instada por el apelante. El 3 de marzo de 1995, en cumplimiento de la Ley Núm. 248 de 25 de diciembre de 1994, se refirió el presente recurso de apelación a este tribunal para ulterior trámite y resolución. Analizados tanto los autos originales del presente caso, como los planteamientos de las partes y el derecho aplicable, confirmamos la sentencia apelada, pero para ello es preciso reseñar los hechos que dieron margen a la controversia que hoy nos ocupa y los fundamentos en que se basa nuestra determinación.

### I

El apelado, Sr. Eduviges Rosado Ortiz (en lo sucesivo Sr. Rosado), contrató los servicios profesionales del apelante, Sr. Francisco Berríos Santos (Sr. Berríos), para que le realizara dos obras de construcción, una en el Barrio Llanos de Aibonito y la otra en el Barrio Barrancas, Sector Maná de Barranquitas. La primera de estas obras consistía en hacer un pasamano con balaustres empotrados a lo largo de la escalera y empañetar la misma; y la segunda consistía en empañetar un apartamento de 42 pies de largo por 14 pies de ancho en la residencia del Sr. Rosado en Barranquitas.

El Sr. Rosado acordó con el Sr. Berríos que como pago a las obras de construcción realizadas le entregaría un vehículo de motor marca Jeep, modelo 1964, el cual por estipulación de las partes le dieron un valor de $2,700.00. La entrega se haría una vez concluidas las obras pactadas. De igual forma, acordaron que luego de que el Sr. Berríos realizara los trabajos de albañilería, éste le quedaría

a deber $950.00 al Sr. Rosado, los cuales pagaría en efectivo. ■

En o alrededor de diciembre de 1990, el Sr. Berríos se presentó a la residencia de una hija del Sr. Rosado alegando que había terminado la obra pactada en Aibonito y que la otra la haría en el mes de enero de 1991, por lo que solicitaba que le entregaran el vehículo Jeep, modelo 1964, ya que lo necesitaba. En esos momentos, el Sr. Rosado se encontraba en los Estados Unidos, por lo que la hija se comunicó con él vía telefónica y luego de que el Sr. Berríos le explicó lo que estaba sucediendo, éste autorizó a su hija a entregar las llaves del Jeep. A pesar de las múltiples gestiones que realizó el Sr. Rosado, el Sr. Berríos nunca terminó las obras contratadas.

Así las cosas, el 18 de julio de 1991, el Sr. Rosado presentó una demanda de rescisión de contrato contra el Sr. Berríos donde alega que toda vez que éste no cumplió con los términos del contrato, ni realizó las obras de albañilería pactadas, la deuda es líquida y exigible. En consecuencia, desea rescindir el contrato y que le devuelvan el precio del vehículo de motor antes mencionados. En adición a ello, solicitó que se le impusiera el pago de una suma de $25.00 por el uso del referido vehículo desde la fecha en que se llevó a cabo el contrato, en vista de que éste actuó de mala fe y le privó de la posesión y uso del mismo.

El 22 de noviembre de 1991, el Sr. Berríos contestó la demanda negando casi todas las alegaciones y reconvino aduciendo, en síntesis, que por las actuaciones del Sr. Rosado ha sufrido tanto él como su familia graves angustias y sufrimientos mentales. Sostuvo que él sí realizó las obras de construcción solicitadas por el demandante y que el referido vehículo le fue entregado sin licencia, por lo que vehículo no se ha podido utilizar.

Luego de varios incidentes procesales, el 2 de marzo de 1993, el Tribunal de Primera Instancia celebró la vista en su fondo donde ambas partes presentaron prueba testifical para sostener sus argumentos y sus puntos en derecho. El 31 de enero de 1994, el foro apelado emitió su sentencia donde declara con lugar la demanda presentada por el Sr. Rosado y sin lugar la reconvención instada por el Sr. Berríos. En consecuencia, decreta la resolución del contrato otorgado entre las partes y en virtud de ello condena al Sr. Berríos a devolver el vehículo de motor marca Jeep en las mismas condiciones en que lo recibió o en su defecto la suma de $2,700.00 que fue el valor que estipularon las partes. Asimismo, el tribunal *a quo* condenó a la parte demandada a pagar la suma de $2,000.00 por el uso que le dio al referido vehículo, más las costas, gastos y $2,000.00 en concepto de honorarios de abogados.

Es de esta sentencia que el Sr. Berríos acudió en apelación ante el entonces Tribunal Superior, Sala de Aibonito, aduciendo los siguientes señalamientos de error:

"A. Erró el Tribunal de Instancia [sic] en la aplicabilidad de las disposiciones del Código Civil a los hechos particulares del caso de epígrafe.

B. Erró el Tribunal de Instancia [sic] en la apreciación de la prueba y, por ende, emitió conclusiones de derecho totalmente contrarias a la prueba presentada.

C. Erró el Tribunal de Instancia [sic] al imponer la suma de $2,000.00 por concepto de daños, todo ello contrario a derecho.

D. Erró el Tribunal de Instancia [sic] al imponer $2,000.00 por concepto de honorarios de abogado (temeridad).

E. Erró el Tribunal de Instancia [sic] al no resolver la reconvención incoada a tenor con el derecho vigente."

Analizados todos los argumentos en que basó su sentencia el foro apelado y los esbozados por las partes, entendemos que procede confirmar la sentencia apelada. Nos explicamos.

## II

En primer lugar discutiremos los dos primeros señalamientos de error. Arguye el apelante que

incidió el foro apelado al aplicar las disposiciones del Código Civil a los hechos particulares del caso de epígrafe y en la apreciación de la prueba.

El Código Civil de Puerto Rico no contiene una definición per se de lo que es un contrato; más bien, se limita en su Art. 1206, 31 L.P.R.A. sec. 3371, a informarnos desde cuándo existe el mismo. Al efecto, dispone dicho precepto que el contrato *"existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio."* Por su parte, sostiene el Art. 1207, 31 L.P.R.A. sec. 3372 del mismo cuerpo de leyes que en términos de contratos *"los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan conveniente, siempre que no sean contrarias a las leyes, a la moral y al orden público".* Obviamente no hay contrato sino cuando concurren los siguientes requisitos: (1) consentimiento de los contratos, (2) objeto cierto que sea materia del contrato, (3) causa de la obligación que se establezca. Art. 1213, 31 L.P.R.A. sec. 3391.

En cuanto al perfeccionamiento de los contratos, el Art. 1210, 31 L.P.R.A. sec. 3375, dispone que:

*"Los contratos se perfeccionan por el mero consentimiento y desde entonces se obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que, según su naturaleza, sean conforme a la buena fe, al uso y a la ley."*

A tenor con las disposiciones legales antes esbozadas, veamos el caso que nos ocupa. De acuerdo a la aportada en el presente caso, tanto por el Sr. Berríos como por el Sr. Rosado, el contrato suscrito entre ambos fue un contrato verbal mediante el cual el primero se comprometía a dar un servicio de albañilería al segundo y recibiría, como pago de estos servicios, un vehículo Jeep del 1964 valorado por ambos en $2,700.00. No albergamos duda de que el referido contrato verbal es válido, más aún cuando no existe disposición alguna en nuestro ordenamiento jurídico que requiera la forma escrita en este tipo de contrato de prestación de servicios profesionales como pre-requisito para su validez.

Ahora bien, sostiene el Sr. Berríos en su escrito que incidió el tribunal *a quo* al no aplicar la figura de dación en pago en el presente caso y al ordenar la resolución del contrato. La denominada dación en pago *"datio in solutium"* se define como el acto por el cual el deudor realiza, a título de pago, una prestación distinta a la que adeudaba al acreedor. Para que se configure esta figura es necesario que se den los siguientes requisitos: (1) una obligación preexistente que se requiere extinguir, (2) un acuerdo de voluntades entre el acreedor y deudor en el sentido de considerar extinguida la antigua obligación a cambio de la nueva prestación, y (3) una prestación realizada con intención de efectuar un pago total y definitivo. *G.E.C.&L. of Puerto Rico. v. T. & O. Dist.,* 132 D.P.R. 51 (1993), **93 J.T.S. 27.**

Como vemos, para que se dé la dación en pago es indispensable que el deudor realice a título de pago, una prestación distinta a la que adeudaba al acreedor. En el caso que nos ocupa entendemos que no se configuró la figura de dación en pago, toda vez que el acuerdo entre las partes, siempre fue que como pago de las obras que el Sr. Berríos realizaría, el Sr. Rosado le pagaría con el referido vehículo Jeep. En ningún momento las partes acordaron una prestación distinta. De igual forma, surge de la prueba presentada y creída por el foro apelado que las partes acordaron desde un inicio que como el vehículo estaba valorado en mayor cantidad de dinero del que costaban las obras, el Sr. Berríos venía obligado a pagarle al Sr. Rosado $950.00. En consecuencia no incidió el tribunal *a quo* al no aplicar la figura de dación en pago al caso de marras.

Por otro lado, entendemos que el foro apelado actuó correctamente al ordenar la resolución del contrato. La prueba presentada en el caso de autos demostró claramente que el Sr. Berríos acudió a buscar el vehículo sin haber terminado las obras que se había comprometido a realizar en Aibonito y que en ningún momento le pagó al Sr. Rosado la suma de dinero que habían acordado. Más aún, las obras que el Sr. Berríos realizaría en Barranquitas, en la casa del demandante, jamás las realizó. El Tribunal de Primera Instancia tuvo la oportunidad de pasar juicio sobre los testimonios ofrecidos por ambas partes y le mereció credibilidad la prueba presentada por el Sr. Rosado. Por ello ordenó la resolución del contrato.

Es preciso recordar que el principio rector que guía nuestra función apelativa dispone que no se intervendrá con las determinaciones que haga un tribunal de primera instancia en ausencia de error

manifiesto, prejuicio, parcialidad o pasión. *Gallardo v. Petitón,* **92 J.T.S. 158**; *Pueblo v. Pellot Pérez,* 121 D.P.R. 791 (1988). Si lo hiciéramos estaríamos usurpando las funciones adjudicativas de dicho tribunal. *Morán Simó v. Gracia Cristóbal,* 106 D.P.R. 155 (1977). Los juzgadores de hechos merecen respeto y confiabilidad en la solución justiciera de los conflictos, en la evidencia a recibirse y en la apreciación imparcial de la prueba. *Pueblo v. Nevárez,* 101 D.P.R. 11 (1973).

El razonamiento existente detrás de este principio de deferencia a las determinaciones de hechos del tribunal *a quo* estriba en que es dicho foro el que está en mejor posición de aquilatar la prueba presentada, toda vez que es ante él que desfilan los testigos y la prueba presentada, teniendo así una ventaja de obtener la información directamente observando el comportamiento y escuchando las respectivas argumentaciones de las partes.

En el caso de autos, la parte apelante no ha presentado evidencia que demuestre que en la determinación del tribunal *a quo*, exista error manifiesto o haya mediado pasión, prejuicio o parcialidad. Ante esta situación nos vemos impedidos de intervenir con la misma.

De más está señalar que en el caso de marras procedía ordenar la resolución del contrato, ya que una de las partes incumplió con los términos del mismo. El Art. 1053 del Código Civil, 31 L.P.R.A. sec. 3017, en su último párrafo, establece que *"en las obligaciones recíprocas ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple con su obligación comienza la mora para el otro."* 31 L.P.R.A. 3017. Cónsono con esto sostiene el Art. 1077, 31 L.P.R.A. sec. 3052, sobre el derecho de resolver obligaciones recíprocas que:

*"La facultad de resolver las obligaciones se entiende implícita en las obligaciones recíprocas para el caso de que uno de los obligados no cumpliere lo que le incumbe.*

*El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible."*

En el caso que nos ocupa, al incumplir el Sr. Berríos con sus obligaciones procedía que el foro apelado ordenara, como lo hizo, la resolución del contrato, condenando a éste a devolver el vehículo en las mismas condiciones en que lo recibió o, en su defecto, los $2,700.00, más el resarcimiento en daños. En virtud de lo anterior, no erró el foro apelado al así hacerlo.

En cuanto al cuarto señalamiento de error expresado por el apelante, es decir, si incidió el foro apelado al condenar a éste al pago de $2,000.00 por concepto de honorarios de abogados, tampoco le asiste la razón. La Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, R. 44.1, dispone en cuanto a las costas y honorarios de abogados, que:

*"44.1 Las costas y honorarios de abogados.*

*(a) ..........*

*(b) ..........*

*(c) ..........*

*(d) Honorarios de abogados. En caso de que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogados."*

El Tribunal Supremo de Puerto Rico ha definido el concepto de temeridad como una actitud que sujeta a un litigante inocente a la ordalía de un proceso judicial, lo expone a gastos innece sarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exhorbitante para su peculio. *Velázquez Ortiz v. Universidad de Puerto Rico,* 128 D.P.R. ___ (1991), **91 J.T.S. 36,** a la pág. 8515. La acción que amerita la condena de honorarios de abogados es cualquiera que haga

necesario un pleito que se pudo evitar que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. *Elba A.B.M. v. U.P.R.,* 125 D.P.R. 299, (1990); *Santos v. Texaco Puerto Rico,* 123 D.P.R. 351 (1989).

En el presente caso el Sr. Berríos conocía perfectamente que no había cumplido las obligaciones contraídas con el Sr. Rosado. Aún así pretende continuar un pleito que pudo haberse evitado con el reconocimiento de sus obligaciones y/o algún acuerdo con el apelado. Es importante que tanto los abogados, como las partes eviten que el valioso tiempo del tribunal se consuma en este tipo de casos. No erró el foro apelado al imponer el pago de $2,000.00 por concepto de honorarios de abogados. Procede que le impongamos mil dólares ($1,000.00) adicionales de honorarios de abogado a favor de la parte apelada por haberse instado una apelación frívola. Regla 85 de nuestro Reglamento.

A la luz de lo antes expuesto, entendemos que es innecesario la discusión del quinto error señalado.

Por los fundamentos antes expresados se confirma la sentencia apelada.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIO 97 DTA 151**

**1.** Según se desprende del testimonio del Sr. Rosado la diferencia en dinero se debía a que el valor del vehículo Jeep excedía el valor de las obras a realizarse.